No. 22-1507

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Sep 29, 2022

DEBORAH S. HUNT, Clerk

DONALD LEE JAMES,                           )
                                            )
    Petitioner-Appellant,                   )
                                            )
v.                                          )    O R D E R
                                            )
JAMES CORRIGAN, Acting Warden, Chippewa     )
Correctional Facility,                      )
                                            )
    Respondent-Appellee.                    )

Before:  MOORE, Circuit Judge.

Donald Lee James, a Michigan incarcerated person proceeding pro se, appeals the district court's judgment denying his petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. This court construes James's notice of appeal as an application for a certificate of appealability. *See* Fed. R. App. P. 22(b)(2).

In 2014, a jury in the Oakland County Circuit Court convicted James of first-degree felony-murder, assault with intent to commit murder, first-degree home invasion, and three counts of possession of a firearm during the commission of a felony.  James's defense at trial was that he was not present at the scene of the crimes.  The trial court sentenced James, who was a juvenile at the time of these offenses, to 40 to 60 years of imprisonment for the felony-murder conviction and concurrent terms of 23 to 50 years of imprisonment for the assault conviction and 11 to 20 years of imprisonment for the home invasion conviction to be served consecutively to three concurrent two-year terms of imprisonment for the felony-firearm convictions.   On direct appeal, James challenged the sufficiency of the evidence to identify him as a participant in the charged offenses. The Michigan Court of Appeals affirmed James's convictions. *People v. James*, No. 322890, 2016 WL 298970 (Mich. Ct. App. Jan. 21, 2016), *perm. app. denied*, 888 N.W.2d 63 (Mich. 2016).

No. 22-1507
- 2 -

Through counsel, James filed a timely habeas petition.  James subsequently moved to stay the habeas proceedings to allow him to exhaust additional claims in the state courts.  The district court granted James's motion and held his habeas petition in abeyance.

James then filed a motion for relief from judgment, which the post-conviction court denied.[1]  The Michigan appellate courts denied leave to appeal.  *People v. James*, No. 349220 (Mich. Ct. App. Sept. 11, 2019), *perm. app. denied*, 946 N.W.2d 255 (Mich. 2020).

James returned to the district court and moved to reopen the habeas proceedings.  The district court granted James's motion and directed him to file an amended habeas petition.  In his amended habeas petition, James raised the following grounds for relief:  (1) the evidence presented at trial was insufficient to place him at the crime scene; (2) the sentencing court failed to fully weigh the factors under *Miller v. Alabama*, 567 U.S. 460 (2012), as required when the state seeks a sentence of life without parole for a juvenile; (3) the trial court applied the wrong standard of review to his motion for a directed verdict; (4) he was denied effective assistance of trial counsel; and (5) he was denied effective assistance of appellate counsel.  The district court denied James's amended habeas petition on the merits and denied him a certificate of appealability.  James timely filed a pro se notice of appeal.

James must obtain a certificate of appealability to appeal the district court's judgment denying his habeas petition.  *See* 28 U.S.C. § 2253(c)(1)(A).  To obtain a certificate of appealability, James must make "a substantial showing of the denial of a constitutional right."  *Id*. § 2253(c)(2).  James "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

*Sufficiency of the Evidence and Directed Verdict:*  James argued that there was insufficient evidence to place him at the home where the crimes occurred on October 22, 2012.  James noted that no eyewitness testimony placed him at the home, and he scrutinized some of the other evidence

---

[1] Different judges conducted James's trial and ruled on his motion for relief from judgment.

that purportedly linked James to the crime.  James also argued that the trial court applied the wrong standard of review to his motion for a directed verdict.  As both the post-conviction court and the district court recognized, James's arguments presented the same issue because the same standard of review applies to a motion for a directed verdict and to a challenge to the sufficiency of the evidence.  *See People v. Lewis*, 788 N.W.2d 461, 467-68 (Mich. Ct. App. 2010), *aff'd in part and vacated in part*, 806 N.W.2d 295 (Mich. 2011).

In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  That "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16.  Under Michigan law, identity is an essential element of every criminal offense. *People v. Oliphant*, 250 N.W.2d 443, 449 (Mich. 1976).

On direct appeal, the Michigan Court of Appeals applied the *Jackson* standard and found sufficient evidence to prove James's identity as a participant in the charged offenses.  James mainly attacked the credibility of two witnesses—Herald, a participant in planning the home invasion, and Thomas, a witness who spoke with James shortly after the offenses.  The court determined that Herald's testimony was supported by "independent physical evidence such as the location of the weapon." *James*, 2016 WL 298970, at *2.  It also concluded that there was sufficient evidence of identity because "a *weapon* was found near the crime scene the next day that contained significant DNA markers linked to James." *Id.* (emphasis added).  As noted by the district court, a *ski mask*— not a weapon—was found near the crime scene and was later revealed to contain James's DNA. The Michigan appellate court concluded that the jury considered and rejected James's attacks on the credibility of those witnesses.  The post-conviction court addressed James's directed-verdict claim by citing this analysis by the Michigan Court of Appeals.

The district court determined that the Michigan Court of Appeals reasonably applied federal law in rejecting James's challenge to the sufficiency of the evidence.  The district court

noted that the Michigan Court of Appeals erred in stating that a *weapon* was found near the crime scene that contained DNA markers linked to James when it was a *ski mask*. The district court concluded that this misstatement did not render the Michigan Court of Appeals' decision unreasonable. But, the district court did not address James's other argument that the Michigan Court of Appeals also erroneously stated that "independent physical evidence such as location of the weapon" supported Herald's testimony. The record indicates that the prosecution never presented independent physical evidence of a weapon attributable to James.

Though Herald testified that James told him that James threw a weapon in a lake, the record does not contain any independent physical evidence of that. Specifically, on direct examination Herald testified that the next morning James told him: that (1) "[w]e fucked up," (2) he left Johnny at the home, and (3) James "threw the gun somewhere. In a lake." On recross examination, when asked about a prior inconsistent statement regarding this conversation and asked to clarify what "[James] sa[id] to [Herald]" "when [James] came over to [his] house," Herald testified that James stated (1) "[w]e fucked up" and (2) "he got shot." Herald did not repeat that James had told him that he threw the gun in the lake. And, as noted above, no independent physical evidence related to this weapon exists in the record. Thus, when the Michigan Court of Appeals explained why there was sufficient evidence of identity, two of the examples it provided—that there was independent physical evidence of a weapon supporting Herald's testimony and that a weapon was found near the home that contained James's DNA—were incorrect descriptions of the evidence.

The district court also may have inadvertently mischaracterized evidence on this point. The district court stated that "[f]urther buttressing the prosecutor's case was" testimony from Thomas that "James later admitted to participating in a robbery, telling her that '[w]e f**ked up,' that Hickerson had been shot, and that he threw a gun into a lake." But Thomas never testified that James told her he threw a gun in the lake. Because of these errors regarding whether sufficient evidence supported James's conviction and the directed-verdict claim, "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Miller-El*, 537 U.S. at 338.

*Sentencing:*   At sentencing, prosecutors sought a life-without-parole sentence for the felony-murder conviction, which the sentencing court ultimately denied.  James asserted that when considering this request, however, the sentencing court failed to fully weigh the factors under *Miller*, the Supreme Court's decision holding that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"  567 U.S. at 465.  *Miller* requires that before a sentencing court can impose a life-without-parole sentence, it must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."  *Id.* at 480.  James also asserted that his sentence of 40 to 60 years of imprisonment amounted to a "de facto" life sentence.

In denying James's motion for relief from judgment, the post-conviction court stated that the trial court fully weighed the *Miller* factors, rejected the prosecutor's request for a sentence of life imprisonment without parole, and imposed a sentence of 40 to 60 years of imprisonment for the murder conviction in accordance with Michigan Compiled Laws § 769.25(9).  On habeas review, the district court determined that the post-conviction court's decision was not contrary to *Miller*.  Reasonable jurists could not debate the district court's determination that the *Miller* factors were fully weighed when the sentencing court declined to impose a sentence of life without parole. The district court further determined that the state court's decision did not contravene *Miller* or other Supreme Court precedent when considering James's "de facto" argument.  Again, reasonable jurists could not disagree with the district court's resolution.  "*Miller*'s holding simply does not cover a lengthy term of imprisonment that falls short of life without parole."  *Atkins v. Crowell*, 945 F.3d 476, 478 (6th Cir. 2019).  "A state decision cannot have unreasonably *applied* a Supreme Court precedent if a habeas petitioner needs a federal court 'to *extend* that precedent' to obtain relief."  *Id*. at 479 (emphasis in original) (quoting *White v. Woodall*, 572 U.S. 415, 426 (2014)).

*Ineffective Assistance of Trial and Appellate Counsel:*  Apart from James's sufficiency-of-the-evidence and directed-verdict claims, James does not assert any viable ineffective-assistance-of-counsel claims.  The post-conviction court analyzed James's ineffective-assistance claims under

the two-part standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), requiring the defendant to demonstrate (1) "that counsel's performance was deficient" and (2) that counsel's "deficient performance prejudiced the defense." To establish deficient performance, the defendant must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The prejudice prong requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. On habeas review under § 2254(d), review of James's ineffective-assistance claims is "doubly" deferential: "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

James asserted that trial counsel failed to request an independent psychological evaluation or a physiological assessment of his brain functioning. The post-conviction court noted that the parties had stipulated to the appointment of the psychiatrist who examined James prior to his sentencing and that James had failed to allege or submit any evidence of a defect in brain functioning. On habeas review, the district court concluded that the post-conviction court's rejection of this ineffective-assistance claim was not an unreasonable application of *Strickland*. Reasonable jurists could not debate that conclusion, because James failed to explain how an expert would have benefited him at sentencing or how trial counsel's stipulation to the appointed psychiatrist, whose report benefited James, amounted to deficient performance. *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006).

James also claimed that trial counsel failed to conduct an adequate pretrial investigation, asserting that trial counsel should have interviewed the son of witness Rachel Thomas and should have sought independent DNA testing. But James failed to present any evidence of what an interview with Rachel Thomas's son would have shown or what independent DNA testing would have revealed. "[T]he absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (quoting *Strickland*, 466 U.S. at 689). The district court concluded

No. 22-1507
- 7 -

that the post-conviction court reasonably applied federal law in rejecting this ineffective-assistance claim; jurists of reason could not debate that conclusion.

James claimed that appellate counsel was ineffective for failing to raise on direct appeal the issues that he raised in his motion for relief from judgment.  The post-conviction court determined that, because the issues raised in James's motion for relief from judgment lacked merit, appellate counsel was not ineffective for failing to raise them on direct appeal.  "[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."  *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013). Reasonable jurists therefore could not disagree with the district court's conclusion that James was not entitled to habeas relief on his claim regarding appellate counsel.

For these reasons, the court **GRANTS** James's application for a certificate of appealability on the sufficiency-of-the-evidence and directed-verdict claims and **DENIES** James's application for a certificate of appealability on all other claims.

The clerk is directed to set a briefing schedule and appoint counsel for James.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk